IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

UNITED STATES OF AMERICA

v.                                                    CRIMINAL NO. 4:20-cr-00017

KARL BURDEN-EL BEY
     a/k/a Carl L. Burden,

       Defendant.

## **GOVERNMENT'S TRIAL BRIEF**

The United States, by and through undersigned counsel, respectfully submits this trial brief to inform the Court of the nature of the case and identify legal and factual issues that might arise at trial.

## I. STATUS OF THE CASE

On March 10, 2020, a grand jury sitting in the Eastern District of Virginia, Newport News Division, charged the defendant, KARL BURDEN-EL BEY, a/k/a "Carl L. Burden" (hereinafter "defendant"), with thirty counts of Aiding in the Preparation of False Tax Returns in violation of 26 U.S.C. § 7206(2) (Counts 1-30), one count of Theft of Government Funds in violation of 18 U.S.C. § 641 (Count 31), and five counts of Failure to File a Tax Return in violation of 26 U.S.C. § 7203 (Counts 32-36).  Doc. 1.  These charges arose out of defendant's conduct spanning from approximately January 2013 through approximately June 2019 while working as a tax return preparer.  During this time, defendant willfully reported false items on his clients' federal income tax returns in order to inflate their refunds, and in turn, generate his own income.  In at least one instance, defendant stole $5,000 directly from the United States Department of Treasury, which

was a portion of his client's falsely-inflated refund.  The defendant also failed to file personal income tax returns for five consecutive years, despite exceeding the minimum filing threshold for statutory gross income earned in each charged year.

The defendant's trial is scheduled to begin on July 6, 2021.  The government anticipates that it will take approximately three days to present its case-in-chief, and expects to call approximately eighteen witnesses, but the government hopes to pre-admit most of its documentary evidence to obviate the need to call custodians of records witnesses, which would cut the witness list down to thirteen.

The government will be represented by Special Assistant United States Attorneys Grace E. Albinson and Francesca L. Bartolomey and Assistant United States Attorney Lisa R. McKeel.

## II. THEORY OF THE CASE

Defendant is 64 years old and is a resident of Hampton, Virginia.  During the years in question, the defendant worked as a tax return preparer in the Eastern District of Virginia. Defendant did not work out of an office; he met with clients in public places to collect their tax-related documents and prepared and filed his clients' tax returns outside of their presence.

### A. Counts One Through Thirty – Aiding and Assisting in the Preparation of a False Return

Counts One through Thirty relate to the defendant's aiding and assisting in the preparation and presentation of fraudulent U.S. individual income tax returns for the 2013 through 2018 tax years on behalf of eleven clients.  The government will prove at trial that the defendant prepared false income tax returns for his clients, resulting in larger tax refunds than those clients were entitled to receive had he prepared their returns honestly.  In some instances, if the defendant prepared his client's return properly, the client would have owed money to the Internal Revenue

2

Service ("IRS").  The defendant often took his fee directly from the client's refund by filing with the return an IRS Form 8888, *Allocation of Refund* ("Form 8888"), which directed the Treasury to deposit all or a portion of the refund to one or more accounts at a bank or financial institution. Specifically, the defendant used the Forms 8888 to direct a portion of his client's refund to their bank account and the balance (the amount of which was often not disclosed to the client) to his own bank account(s).  The IRS does not permit a tax preparer to use Form 8888 in order to receive his tax preparer fee.  The Instructions to Form 8888 specify that the form should only be used to direct a portion of a refund to an account in the name of the individual to whom the tax return pertains.

The government anticipates presenting evidence that the defendant generated tax returns that included numerous falsities: the residential energy credit and Schedule A deductions, such as gifts to charity, medical expenses, and unreimbursed employee expenses.  Definitions of common terms that will be used in the trial include the following:

Tax Credits – A tax credit reduces the amount of tax owed by a taxpayer dollar-for-dollar. Tax credits can be refundable or non-refundable.  If the amount of a refundable tax credit is larger than the tax that the taxpayer owes, the taxpayer will receive a refund for the difference.  If the amount of a non-refundable tax credit is larger than the tax that the taxpayer owes, their liability is reduced to zero.

Child Tax Credit – The Child Tax Credit was a non-refundable credit that allowed taxpayers to lower their federal income tax by up to $1,000 for every qualifying dependent child.

3

Additional Child Tax Credit – The Additional Child Tax Credit was the refundable portion of the Child Tax Credit.  If the Child Tax Credit reduced a taxpayer's tax to zero, the taxpayer could claim the excess credit as a tax refund.

Form 2441, *Credit for Child and Dependent Care Expenses* – This provides a credit for taxpayers who paid expenses for the care of a qualifying individual in order to enable the taxpayer to work.  The amount of the credit was up to 35 percent of the amount of expenses the taxpayer paid to a care provider for the care of a qualifying individual.  These amounts were capped at $3,000 for one dependent and up to $6,000 for two or more dependents.

Deductions – A tax deduction reduces the amount of a taxpayer's income before the tax owed is calculated.

Dependents – A dependent was a person other than the taxpayer or spouse who entitled the taxpayer to claim a dependency exemption which decreases income subject to tax.

Form 5696, Residential Energy Credit – The Residential Energy Efficient Property Credit was a non-refundable credit equal to 30 percent of the cost of qualified property purchased to make a taxpayer's home more energy efficient, such as solar water heaters, geothermal heat pumps, etc. In order for the credit to be claimed, the taxpayer must have made the relevant upgrades on the home that they own.

Schedule A Itemized Deductions – Relevant itemized deductions included: medical and dental expenses, gifts to charity, and unreimbursed employee expenses.

Certain unreimbursed medical and dental expenses qualified as deductible in an amount up to 10 percent of the taxpayer's adjusted gross income.

4

Gifts to certain charitable organizations—either by cash or non-cash (in the form of property or goods)—were deductible.  For non-cash gifts, if the charitable deduction was over $500, the taxpayer was required to attach a Form 8283, *Noncash Charitable Deductions* ("Form 8283").

Certain unreimbursed job-related expenses were deductible in any amount that exceeded 2% of the taxpayer's adjusted gross income.  If the taxpayer claimed expenses related to travel, transportation, meals, or entertainment, then the taxpayer must have attached a Form 2106, *Employee Business Expenses*.

Schedule C – Taxpayers could report self-employment income and expenses by attaching a Schedule C to the taxpayer's Form 1040.  If the difference between the gross income and expenses was a loss to the taxpayer, the taxpayer's total income was reduced by that amount.

A "ghost preparer" is a person who prepares tax returns for others in exchange for a fee, but who does not indicate that he or she has done so on the taxpayer's return in the Paid Preparer Section, despite the IRS's requirement that paid preparers do so.

*B. Count Thirty-One – Theft of Government Funds*

Additionally, the government will prove that the defendant stole a portion of clients' S.B. and M.B's tax refund, in the amount of $5,000, which was the property of the United States. Defendant accomplished this by preparing a false return for the client which resulted in a greatly inflated refund and by diverting $5,000 of the total refund of $18,437, to a bank account controlled by him via a Form 8888.

5

*C. Counts Thirty-Two through Thirty-Six – Failure to File a Tax Return*

Finally, the government will prove that for five consecutive years, the defendant did not file a tax return by the statutory due date despite earning gross income in excess of the minimum filing threshold each year from 2013 through and including 2017:

| COUNT | CALENDAR YEAR OF TAX RETURN | MINIMUM GROSS INCOME | APPROXIMATE DUE DATE OF RETURN |
|---|---|---|---|
| 32 | 2013 | $10,000 | April 15, 2014 |
| 33 | 2014 | $10,150 | April 15, 2015 |
| 34 | 2015 | $10,300 | April 18, 2016 |
| 35 | 2016 | $10,350 | April 18, 2017 |
| 36 | 2017 | $10,400 | April 17, 2018 |

III. PROOF OF CONDUCT

The government will prove the defendant's unlawful conduct through the testimony of taxpayer-client witnesses and IRS representatives, in addition to the admission of IRS and third-party records.

The government estimates it will seek to admit approximately 260 exhibits, some of which are hundreds of pages long.  In an effort to streamline the trial, the government will seek to pre-admit many of these exhibits (under separate submission).

*A. The Taxpayer-Clients*

The taxpayer-clients will generally testify that they did not provide the false information that appears on their tax returns to the defendant.  Many will testify that the defendant did not review the return with them, nor did he provide them with a copy of the prepared and filed tax returns.

6

*B. IRS Records and Witnesses*

Through an IRS Service Center Representative, the government will introduce copies of the individual tax returns and transcripts of accounts for the clients as self-authenticating certified copies of public records, pursuant to Federal Rule of Evidence 902(4).  Certified copies of public records require no extrinsic evidence of authenticity for admissibility. Fed. R. Evid. 902(1) and (4); *see also United States v. Dancy*, 861 F.2d 77, 79 (5th Cir. 1988).  Although certified public records are self-authenticating, the government will call IRS witnesses to explain the contents of the records to the jury and discuss the lack of records, such as a PTIN belonging to the defendant.  These IRS records will show that the returns included a variety of deductions and credits (as described above) that the clients were not entitled to claim and did not discuss with the defendant.

Notably, the IRS records will *not* show defendant's name or contact information in the "Paid Preparer" section of the returns, as required.  The evidence will show that the defendant acted as what is referred to by the IRS as a "ghost" preparer; meaning, the defendant prepared tax returns for clients, accepted a fee for such service, yet did not indicate that he had done so in the space on the returns specifically reserved for paid preparers.  He concealed his role in the preparation of client tax returns.  This practice is in contravention with IRS policies for paid tax return preparers.

Although defendant did not sign his name to any of the tax returns in question, he left telltale identifiers throughout the returns.  On some occasions he put his own address or phone number on a return instead of the taxpayer's.  On other occasions he put the names of his own corporations on Schedule A attachments in an attempt to pass them off as charitable organizations to which the taxpayers made donations, thereby fraudulently reducing their taxable income.

Additionally, the defendant put his own bank account numbers on the Form 8888 attachments to the clients' returns to divert portions of their falsely-inflated refunds to his own use. Because this evidence is intrinsic to the government's proof, the government will seek (under separate submission) the Court's permission to present unredacted exhibits at trial and file redacted versions with the Court at the trial's conclusion.

Through its IRS summary witness, the government will show how the false information reported by defendant on the clients' tax returns produced tax refunds in excess of what they should have been. Indeed, in some cases, the clients would not have been entitled to a refund at all, and instead, would have owed money to the IRS. The government will further show through this witness an analysis of the defendant's bank records evidencing that he received gross income in excess of the minimum filing thresholds for each respective year.

*C. Other Evidence*

Since defendant's name does not appear in the "Paid Preparer" section of the clients' returns he prepared, the government may introduce additional evidence linking defendant to the preparation of the returns in question, including email subscriber information and Virginia state corporation documents, in addition to witness testimony.

The government also intends to introduce voluminous bank records which will form the basis for much of the IRS summary witness's testimony regarding defendant's income.

IV. SUMMARY OF THE OFFENSES

## Aiding and Assisting in the Preparation of a False Tax Return

The defendant is charged with 30 counts of aiding and assisting in the preparation and presentation to the IRS of a false tax return, in violation of Title 26 U.S.C. § 7206(2), which reads in pertinent part:

> Any person who … willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with, any matter arising under, the internal revenue laws, of a return, affidavit, claim or other document, which is fraudulent or false as to any material matter, whether or not such falsity of fraud is with the knowledge or consent of the person authorized to or required to present such return, affidavit, claim, or document…shall be guilty of a crime.

26 U.S.C. § 7206(2).   In order to establish a violation of 26 U.S.C. § 7206(2), the government must prove the following elements beyond a reasonable doubt:

> (1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return;
> (2) that the return was fraudulent or false as to a material matter; and
> (3) the act of the defendant was willful.

*United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir. 1996) (quoting *United States v. Salerno*, 902 F.2d 1429, 1432 (9th Cir. 1990); see also *United States v. Kimble*, 855 F.3d 604, 614 (4th Cir. 2017).

*A. The Defendant Aided in the Preparation of a Tax Return*

As a threshold matter, the government need not prove that the defendant actually prepared or filed the returns.  *See United States v. Head*, 697 F.2d 1200, 1208 n.13 (4th Cir. 1982) (trial court's dismissal of § 7206(2) charges because government  failed to prove defendant  actually prepared the returns at issue was "clearly contrary" to holdings of numerous circuits, which  held that actual preparation of the return was not required under § 7206(2)); *see also United States v.*

*Morrison*, 833 F.3d 491, 500–02 (5th Cir. 2016) (upholding defendant's conviction on all § 7206(2) counts where the evidence established that he prepared only two of the returns, but was actively involved in and knowledgeable of the entire scheme).

*B. The Tax Return Contained a Materially False Statement*

A false statement is material if it has a "natural tendency to influence or is capable of influencing the IRS." *Neder v. United States*, 527 U.S. 1, 16 (1999) (internal citation omitted). The taxpayer-clients will testify that they did not tell the defendant to report the false items on their tax returns, nor did they incur expenses or make charitable donations that would entitle them to the credits and deductions claimed on their returns.

*C. The Defendant Acted Willfully*

To act "willfully" with respect to the federal criminal tax statutes means to act voluntarily and intentionally with specific intent to violate a known legal duty.  *See United States v. Bishop*, 412 U.S. 346, 360 (1974); *and see Cheek v. United States*, 498 U.S. 192, 200 (1991).  While a defendant's conduct is not willful if it is due to negligence, inadvertence, mistake, or is the result of a good faith misunderstanding of the law, disagreement with the law does not constitute a good faith defense sufficient to negate a finding of willfulness.  *See United States v. Snyder*, 766 F.2d 167, 170 (4th Cir. 1985); *and see United States v. Bressler*, 772 F.2d 287, 291 (7th Cir. 1985).

In this case, the defendant did not merely mistakenly add items or inflate figures, he completely fabricated line items on the tax returns.

Theft of Government Funds

The defendant is charged with one count of theft of government funds in violation of 18 U.S.C. § 641, which reads in pertinent part:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof shall be guilty of a crime.

18 U.S.C. § 641.  To establish a violation of 18 U.S.C. § 641, the government must prove the following elements beyond a reasonable doubt:

(a) That the money or property described in the indictment is a thing of value belonging to the United States government;

(b) That the defendant knowingly converted or caused the conversion of that money to his own use;

(c) That the defendant acted knowingly and willfully with the intent to deprive the government of the use and benefit of its property; and

(d) That the value of the property was greater than $1,000.

*United States v. Kiza*, 855 F.3d 596, 601 (4th Cir. 2017).

*A. The Property is A Thing of Value Belonging to the United States*

To satisfy this element, the government must prove that more than $1,000 of the $5,000 the defendant took from the client's refund belonged to the United States government.  This means that at the time the defendant stole the property, the United States government or an agency of the United States government had either title to, possession of, or control over the property.  *See United States v. Landersman*, 886 F.3d 393, 409 (4th Cir. 2018).

A taxpayer-client will testify that the defendant prepared his 2015 Form 1040 and on it there were false items.  The defendant directed via a Form 8888 that $5,000 from that inflated

11

refund be deposited into a bank account controlled by him.  At the time the defendant took that $5,000, it was the rightful property of the United States Department of Treasury, an agency of the United States.  *United States v. Gill*, 193 F.3d 802, 804 (4th Cir. 1999); *See also United States v. Wylie*, 813 F.2d 1229 (4th Cir. 1987) (*unpublished*), *citing United States v. Richardson*, 755 F.2d 685 (8th Cir. 1985) ("[T]here is no doubt that United States Treasury checks are "things of value" within the meaning of the statute.")

*B. The Defendant Stole the Property*

To satisfy this element, the government must prove that the defendant stole the property belonging to the United States, or took it away from the United States (or an agency thereof) despite the United States having lawful possession, with the intention to keep it wrongfully.  *See Morissette v. United States*, 342 U.S. 246, 271 (1952).

*C. The Defendant Acted Knowingly and Willfully*

To act knowingly means to act intentionally and voluntarily, and not because of ignorance, mistake, accident or carelessness. *See United States v. Fowler*, 932 F.2d 306, 317-18 (4th Cir. 1991).

To act willfully in this instance, as opposed to its meaning within the context of a criminal tax statute, means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say, with the bad purpose to disobey or disregard the law. *See id.* at 316.

Willfulness will be proved through, among other things, the witness testimony.

*D. The Value of the Property was Greater than $1,000*

To satisfy this element, the government must prove that the value of the $5,000 defendant stole from the United States Treasury was greater than $1,000.

<u>Failure-to-File a Tax Return</u>

The defendant is charged with five counts of failure-to-file a tax return in violation of 26 U.S.C. § 7203, which reads in pertinent part:

> Any person … required to make a return … who willfully fails to … make such return … at the time or times required by law or regulations … shall be guilty of an offense against the United States.

26 U.S.C. § 7203.  To establish a violation of 26 U.S.C. § 7203, the government must prove the following elements:

(a) That the defendant was a person required to file a return;

(b) That the defendant failed to file at the time required by law; and

(c) That the failure to file was willful.

*United States v. Ostendorff*, 371 F.2d 729, 730 (4th Cir. 1967).

*A. The Defendant Was Required to File a Return*

The amount of gross income that triggers the filing requirement changes over the years with the minimum income thresholds for the applicable years described in the table below:[1]

---

[1] These income filing thresholds apply to individuals under the age of 65 who claim "single" filing status. 26 U.S.C. § 6012(a)(1)(B).

13

| COUNT | CALENDAR YEAR | MINIMUM GROSS INCOME | APPROXIMATE DUE DATE OF RETURN |
|---|---|---|---|
| 32 | 2013 | $10,000 | April 15, 2014 |
| 33 | 2014 | $10,150 | April 15, 2015 |
| 34 | 2015 | $10,300 | April 18, 2016 |
| 35 | 2016 | $10,350 | April 18, 2017 |
| 36 | 2017 | $10,400 | April 17, 2018 |

The government will prove that the defendant received gross income in each of the charged years in excess of the minimum filing thresholds triggering an obligation on his part to file a return.

*B. The Defendant Failed to File at the Time Required by Law*

Section 6072 of the Internal Revenue Code prescribes the time for filing income tax returns. Individuals who file on a calendar year basis are required to file a return on or before the 15th day of April following the close of the calendar year. 26 U.S.C. § 6072(a). When the last day for filing a return falls on a Saturday, Sunday, or a legal holiday, the return will be considered timely filed if it is filed on the next succeeding day that is not a Saturday, Sunday, or legal holiday. 26 U.S.C. § 7503.

In this case, the government will prove, by means of IRS records and testimony, that defendant did not file a tax return for the charged tax years. The government filed notice of its intent to offer this evidence via email to defense counsel on May 25, 2021.

Rule 803(10) of the Federal Rules of Evidence directly addresses the issue of proof of the "absence of a record, report, statement, or data compilation in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation in any form, was regularly made and preserved by a public office or agency." The Rule provides that proof may be

14

in the form of testimony "that diligent search failed to disclose record, report, statement, or data compilation, or entry" or a certification in accordance with Rule 902 of the Federal Rules of Evidence.  Fed. R. Evid. 803(10).      At trial, the government will introduce certified excerpts of IRS transcripts covering the tax years at issue for defendant through the testimony of an IRS Service Center Representative, a custodial witness.  The Service Center Representative will testify that he conducted a search of the records that would reveal if any return was received for the years in question and that the records revealed that no IRS Forms 1040 had been filed by defendant as of the day of the search.

*C. The Failure to File was Willful*

Willfulness is a "voluntary, intentional violation of a known legal duty."  *Cheek v. United States*, 498 U.S. 192, 199 (1991).   In a failure-to-file prosecution, the government must prove that the defendant acted intentionally, with the specific intent to do something that the law prohibited, that is to say, with intent to either disobey or disregard the law. *United States v. Abboud*, 438 F.3d 554, 581 (6th Cir. 2006).

Proof of willfulness in a failure-to-file case usually is shown by circumstantial evidence alone.  *United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989).   A defendant's past taxpaying history is admissible to prove willfulness circumstantially.  *United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006).  Willfulness may be inferred from a pattern of failing to file for consecutive years in which returns should have been filed. *United States v. Greenlee*, 517 F.2d 899, 903 (3d Cir. 1975). This may include years prior or subsequent to the prosecution period.  *United States v. Upton*, 799 F.2d 432, 433 (8th Cir. 1986).

15

The tax filing history of defendant shows willfulness.  Certified IRS records will show that defendant failed to file individual income tax returns for 2013 through 2017.    This history, combined with his experience as a professional return preparer, demonstrates that defendant's willfulness.

Willfulness can also be shown by such factors as a defendant's background. Relevant background characteristics include the defendant's familiarity with books and records and experience operating a business; (e.g., *United States v. Segal*, 867 F.2d 1173, 1179 (8th Cir. 1989)) and his receipt of a large gross income,(e.g., *United States v. Bohrer*, 807 F.2d 159, 161(10th Cir. 1986)).


V. EVIDENTIARY ISSUES

*A. Summary Witness*

To assist the jury's examination of the false items on the taxpayer-clients' returns, the tax consequences of those false items, and the defendant's obligation to file tax returns in each of the charged years, the government intends to present summary witness testimony in its case-in-chief through IRS Revenue Agent Stephanie Madrey.  The use of summary testimony witnesses is governed by Fed. R. Evid. 1006, and is "generally permissible in the sound discretion of the trial court […]." *United States v. Pineda*, 1996 U.S. App. LEXIS 15827, *8 (4th Cir. 1996).

Summary witness testimony is routinely admitted in tax prosecutions.  Here, Revenue Agent Madrey will remain in the courtroom during trial to listen to the testimony of the taxpayer-clients and, based on this testimony, summarize how the false items affected the refunds claimed and due.  She will summarize voluminous bank records, pursuant to Federal Rule of Evidence

16

1006.  Her testimony will also include a summary analysis of IRS Forms 8888, defined in Section II(B) above.

The government provided a preliminary notice under Federal Rules of Evidence 702, 703, 705, and 1006 to the defendant of this testimony via email on May 27, 2021.  The government does not believe that this summary testimony requires Revenue Agent Madrey to be qualified as an expert witness, however, notice was served out of an abundance of caution, and courts have routinely held that an IRS revenue agent can properly testify as an expert witness. *See e.g., United States v. Moore*, 997 F.2d 55, 58 (5th Cir. 1993); *United States v. Mohney*, 949 F.2d 1397, 1406 (6th Cir. 1992); *United States v. Barnette*, 800 F.2d 1558 (11th Cir. 1986).

As is standard practice in federal tax prosecutions, the government will request that Revenue Agent Madrey be permitted to remain in the courtroom throughout the presentation of the evidence.  Revenue Agent Madrey is a person whose presence is essential to the presentation of the government's case.  Indeed, it is her role to know and summarize the evidence, including client witness testimony specifically regarding false items on their tax returns, and to recalculate the tax loss based on an accurate analysis of those items.  Thus, the government requests that the summary witness be exempted from any Fed. R. Evid. 615 rule to exclude witnesses from the courtroom.  *See United States v. Rhynes*, 218 F.3d 310, 319 n. 8 (4th Cir. 2000).

B.      *Business Records Certifications*

The Rules of Evidence allow for the introduction of such records by certification from the custodian or other qualified person. Fed. R. Evid. 803(6) ("by the testimony of the custodian or other qualified witness, or *by certification that complies with Rule 902(11)* ...") (emphasis added).

Fed. R. Evid. 902(11) provides the procedure by which the domestic record of a regularly conducted activity might be introduced without calling a witness. A custodian or other qualified person must certify that the requirements of the business records exception of Rule 803(6) are met.   Additionally, the party intending to offer the record into evidence under Rule 902(11) must provide written notice to all adverse parties, and make the record and declaration available for inspection sufficiently in advance of the offer into evidence to provide the adverse party with an opportunity to challenge the records.

The Supreme Court explicitly characterized business records as nontestimonial; thus, the availability of the original declarant of an assertion made in a business record remains immaterial. *Crawford v. Washington,* 541 U.S. 36, 56 (2004).  Moreover, nothing in Rule 803(6) requires that a Rule 902(11) certification be admitted *into evidence* as a condition precedent to the admissibility of business records under Fed. R. Evid. Rule 803(6) provides in relevant part for the admissibility of:

> A . . . record . . . in any form . . . of acts . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by . . . certification that complies with Rule 902(11)  . . . .

(Emphasis added).  The rule does not state that a custodian's certification needs to be "shown" to the trier of fact as a precondition to admissibility of evidence under the business records exception. Rather, the broad language of Rule 803(6) allows the court to decide under Rule 104(a)8 whether a certification conforms to Rule 902(11).  *See* Fed. R. Evid. 803 Practice Note which states:

> The predicate or foundation that normally must be laid for admissibility of a record under Rule 803(6) includes a number of points.  The judge must

be convinced, pursuant to Rule 104(a), that the requirements of Rule 803(6) are met.

The government expects to offer into evidence financial records made and kept in the regular course of business under Fed. R. Evid. 803(6). All of these entities kept the records sought to be introduced in the regular course of business. Notice of intent to offer these records pursuant to the certification procedures of Rule 902(11) was provided to defense counsel on May 25, 2021 via email.

*C. IRS Service Center Records*

The government will introduce the vast majority of the relevant IRS records, including client tax returns and transcripts for the 2012 through 2018 tax years, as self-authenticating certified copies of public records, pursuant to Federal Rule of Evidence 902. These documents are self-authenticating, however, the government will use an IRS Service Center Representative, Thomas Bolus, to testify and explain the contents of the records to the jury. These documents are exceptions to the hearsay rule under Federal Rules of Evidence 803(6), (8), and (10).

*D. Summary Evidence and Demonstrative/Visual Aids*

The use of summary evidence is governed by Federal Rule of Evidence 1006, which is interpreted broadly. The Rule allows admission of summaries when the admitted evidence is voluminous, and review by the jury would be inconvenient. Federal Rule of Evidence 1006 requires that the summarized evidence is voluminous, admissible, and available for inspection. *United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004).

To aid the jury, Revenue Agent Madrey will use summary charts, based upon admitted evidence. The summary schedules will be based upon only evidence that is admitted at trial. By necessity these schedules will not be finalized until shortly before Revenue Agent Madrey testifies,

19

as Agent Madrey will base adjustments to the clients' tax returns on their live testimony at trial. As such, final copies of her summary schedules will be provided to the defense shortly before she testifies.  However, draft schedules reflecting the evidence the government anticipates will be admitted have been prepared and provided to defense in advance.  On May 27, 2021, the government provided the defendant via email to his counsel copies of these draft summary schedules and notice of the substance of Revenue Agent Madrey's anticipated testimony.

*E. Specific Items to Prove Income*

The government intends to prove that in each of the tax years 2013 through 2017—charged in counts thirty-two through thirty-six of the indictment—the defendant received gross income from his tax preparation business that exceeded the minimum filing thresholds in those years.  The government will introduce into evidence tax returns the defendant prepared for tax years 2012 through 2016—for which he earned income in 2013 through 2017—to prove that he received gross income over the minimum threshold filing amount.  The government will not call as witnesses each taxpayer whose refunds constitute the defendant's gross income, nor does it need to.  These tax returns will be authenticated by either certification under Federal Rule of Evidence 902(11) or records custodian testimony and are an exception to hearsay under Federal Rule of Evidence 803(6).  Additionally, Revenue Agent Madrey will testify that the Forms 8888 attached to these tax returns directed a portion of the taxpayer-clients' refunds to the defendant's bank accounts in matching amounts.

*F.  Theft of Taxpayer-Clients' Refunds*

The government will introduce evidence that defendant stole a portion of their tax refunds. In some cases, the taxpayer-clients believed the defendant would take a reasonable amount for fees

from their refunds, but not amounts over $1,000 that the defendant generally took.  Other taxpayer-clients paid the defendant in cash and were unaware he was taking anything from their refunds, let alone over $1,000.

Fed. R. Evid. 404(b) applies only to evidence that is extrinsic to the charged crime and does not limit the admission of evidence of acts which are intrinsic to the crimes charged. *United States v. Chin*, 83 F.3d 83, 87 (4th Cir. 1996).  Evidence that is intrinsic is that which is inextricably intertwined with the evidence used to prove the crime charged.  *See United States v. Bush*, 944 F.3d 189, 195 (4th Cir. 2019); *and see United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010).

Here, testimony about the taxpayer-clients' fee arrangement (or lack thereof) with the defendant, and evidence of the amount of fees the defendant took (or stole) from the clients' tax returns is inextricably intertwined with the evidence used to prove the crimes charged.  Defendant's receipt of fees speaks directly to his intent and willfulness, as does the concealment of those "fees" from his clients.  Indeed, willfulness is an element of the crime of aiding and assisting in the filing of a false tax return.  Moreover, the defendant's receipt of these fees is proof of his receipt of gross income over the minimum threshold filing amounts; such proof is necessary for Counts 32 through 36 of the indictment charging the defendant with failure to file tax returns.

## VI. COURTROOM PROCEDURES

*Pro se* defendants, particularly those who associate with the "sovereign citizen" or "tax defier" movements often present unique issues at trial.  For example, in the past, many of these individuals have attempted to introduce different types of legal and pseudo-legal materials, including copies of arcane federal court decisions, obscure statutes and regulations, books and other information about sovereign citizen ideology, and irrelevant admiralty and contract law.

21

Often they seek to rely on self-serving hearsay, or elicit testimony from other witnesses to establish defendant's state of mind, or invite the jury to speculate on punishment.  The government will file a *motion in limine* to preclude these and other tactics commonly used by defendants who profess to subscribe to these ideologies.

Should the defendant proceed *pro se*, two issues in particular are raised: the role of standby counsel and how defendant is to conduct himself should he choose to take the stand in his own defense.

*A. The Role of Standby Counsel*

Should the defendant request to represent himself at trial, and should the Court grant the request, the government requests that Ms. Tayman remain on as standby counsel during trial.  The defendant has a constitutional right to conduct his own defense, so long as his decision to waive his Sixth Amendment right to counsel is made "knowingly and intelligently." *Faretta v. California*, 422 U.S. 806, 821 (1975).  The Supreme Court has recognized the trial court's authority to appoint standby counsel, with or without defendant's consent, in order to assist the *pro se* defendant if and when he requests help, and "to be available in the event that termination of the defendant's self-representation is necessary." *Faretta*, 422 U.S. at 834 n. 46; *and see United States v. Stewart*, 129 Fed. Appx. 758, 765 (4th Cir. 2005) (noting that a defendant "may certainly be required to accept the assistance of standby counsel over objection").

The primary purpose of standby counsel is to provide technical assistance to the *pro se* defendant, to help him successfully navigate the rules of courtroom procedure and protocol, without constant reminder by the judge, and to otherwise "assist the defendant in overcoming the routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated

goals." *McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984).   A *pro se* defendant is ultimately responsible for and must be allowed to conduct his own defense "in his own way." *Wiggins*, 465 U.S. at 177 & n. 8 (a *pro se* defendant "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'")(quoting *Faretta*, 422 U.S. at 834 n. 46).   Thus, the role of standby counsel is substantially more limited than that of retained or appointed counsel.

Two important limitations on the role of standby counsel were set forth by the Supreme Court in *Wiggins*.   First, the Court held that "the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury." *Wiggins*, 465 U.S. at 178.   Second, that "participation of standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id.*   Although participation by counsel with the *pro se* defendant's express approval is not constitutionally objectionable, *id.* at 182, federal courts have uniformly held that a criminal defendant has no constitutional right to "hybrid" representation, or to appear on his own behalf when he deems appropriate, and to also "choreograph special appearances by [standby] counsel." *Wiggins*, 465 U.S. at 183.

In general, the *pro se* defendant "must be allowed to control the organization and content of his own defense," and participate meaningfully in all aspects of trial, including motion practice, examination of witnesses, jury selection, and bench conferences. *Id.* at 174.   He must also be allowed to address the Court and the jury at appropriate times and any disputes between him and his standby counsel that may arise must be "resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel." *Id.* at 179.

23

With these rights and limitations in mind, the government asks that the following parameters be set forth regarding the defendant's rights as a *pro se* defendant and the role of standby counsel:

1. The defendant must be permitted to freely argue points of law to the Court, participate in jury selection, question witnesses and address the Court and the jury at all appropriate times. *See Wiggins*, 465 U.S. at 174.  Standby counsel should not take an active role in the representation of Mr. Burden-El Bey (by, for example, addressing the court and jury, questioning witnesses, participating in jury selection, presenting opening or closing arguments, lodging objections to questions) and should not appear in Court or before the jury in lieu of Mr. Burden-El Bey. *See Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (self-represented defendant's consent to standby counsel's sole participation in chambers conference of jury questions during deliberations was necessary, in order for counsel's solo appearance to be consistent with defendant's right to self-representation).

2. The defendant should be permitted to file motions with the Clerk, so long as such filings are not frivolous, and the government therefore would request that any filings be subject to review (although not approval) by Ms. Tayman. *See United States v. Walsh*, 742 F.2d 1006, 1007 (6th Cir. 1984) (requiring defendant to submit motions to advisory counsel for review, but not approval, held not to violate defendant's right of self-representation).

3. Standby counsel should be permitted to assist Mr. Burden-El Bey only if and to the extent that he expressly requests and consents to her assistance.  Such assistance can include help with courtroom procedures, filing motions, evidentiary matters, legal research, and other procedural matters that will help the defendant achieve his goal of presenting his own defense in

24

his own way. The defendant should also be advised that if standby counsel assumes responsibility for a task with which he has not requested assistance, he should raise any objection to any such assistance with the Court as soon as possible.

4. The defendant should not be permitted to "choreograph special appearances" by standby counsel in this case, particularly before the jury. *Wiggins*, 465 U.S. at 183. The government respectfully requests that the Court decline any request by Mr. Burden-El Bey for "hybrid" representation and advise him that his extensive use of standby counsel will effectively waive his right to proceed *pro se*. Hybrid representation in this case would risk confusing the jury about whether or not the defendant is truly representing himself and would put appointed standby counsel in the untenable position of either presenting arguments advanced by the defendant that may not have a basis in law or objecting to the defendant's request to present such arguments, creating unnecessary conflict, confusion, and delay.

5. Mr. Burden-El Bey should be advised that while he may change his mind about representing himself and request counsel take over his representation, he does not have the absolute right to withdraw his request for self-representation once meaningful trial proceedings have begun as the right to self-representation "does not exist…to be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000) (citations omitted). Indeed, this circuit has continually recognized that a request by a defendant to rescind his *pro se* status and reinvoke his right to counsel raises "the countervailing public interest in proceeding on schedule." *United States v. Cohen*, 999 F.3d 667, 681 (4th Cir. 2018) (citing *United States v. West*, 877 F.2d 281, 286 (4th

Cir. 1989). Therefore, any such request by Mr. Burden-El Bey that would cause undue delay of the trial or that is made after trial has begun may be denied by the Court.

*B. Procedures for Handling Defendant's Testimony*

If Mr. Burden-El Bey chooses to testify, the government would request that he not be permitted to testify in narrative form, since such would not allow the government to have the opportunity to make timely objections to certain questions. The government would propose in the alternative that the Court require defendant to ask himself questions and give enough time for the government to lodge any objection it may have, and then, if an objection is not made or is overruled, defendant would then answer the question.

VI. OTHER ISSUES

*A. Sanction Trial Presentation Software*

The government requests the Court's permission to use Sanction software to electronically present many of the government's exhibits to the jury. The government would also propose to provide each juror with a binder or binders containing only the trial exhibits that the government intends to show witnesses at trial. Of course, a full set of all of the government's admitted exhibits will be available for inspection by the jury.

*B. Estimated Number of Days for Government's Case*

Jury empanelment is scheduled for July 6, 2021. The government estimates that it will finish presenting its case-in-chief in approximately three trial days. The government expects to call approximately eighteen witnesses in its case-in-chief, but hopes to secure stipulations from

the defendant or orders from the court in order to eliminate the need for records custodian testimony.

## VI. CONCLUSION

This brief presents some of the legal and evidentiary issues that the United States expects may arise at trial.  If other issues arise that have not been covered herein, the United States may request permission to file supplemental briefing.

Respectfully submitted,

RAJ PAREKH
United States Attorney

By: _____

Francesca L. Bartolomey
Trial Attorney
New York Bar No. 5089990
United States Department of Justice, Tax Division
Southern Criminal Enforcement Section
150 M Street, N.E.
4 Constitution Square, Mail Stop: 1.1505
Washington, D.C. 20002
Francesca.L.Bartolomey@usdoj.gov
Tel. (202) 305-8803

GRACE E. ALBINSON
Trial Attorney
New York Bar No. 4952697

LISA R. MCKEEL
Assistant United States Attorney
Eastern District of Virginia, Newport News Division
Virginia Bar No. 28652

27

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2021, I electronically filed the foregoing Government's Trial Brief using the CM/ECF system, which will send notification of such filing to the following:

> Laura P. Tayman, Esq.
> Counsel for the Defendant
> 11815 Fountain Way, Suite 300
> Newport News, Virginia 23606
> (757) 926-5277
> Laura@TaymanLaw.net

By:/s/ _____
FRANCESCA L. BARTOLOMEY
Trial Attorney
New York Bar No. 5089990
U.S. Department of Justice, Tax Division
Southern Criminal Enforcement Section
150 M Street, N.E.
4 Constitution Square, Mail Stop: 1.1505
Francesca.L.Bartolomey@usdoj.gov
Tel. 202-305-8803