IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:20-CR-17-DJN |
| KARL BURDEN-EL BEY and | ) | |
| a/k/a CARL L. BURDEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## THE UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through the undersigned counsel, hereby submits this memorandum in support of its position that Karl Burden-El Bey (a/k/a Carl L. Burden), hereinafter "defendant," should receive a sentence of imprisonment at the high end of the Guidelines range, which is 33 to 41 months of imprisonment and three years of supervised release. The defendant is responsible for causing an intended tax loss of approximately $302,911 to the United States government, and the recommended sentence is "sufficient, but not greater than necessary, to comply with" 18 U.S.C. § 3553. The Court should also order the defendant to pay restitution to the United States of $249,243.

## I. PROCEDURAL HISTORY

On March 10, 2020, a grand jury sitting in the Eastern District of Virginia, Newport News Division, charged the defendant, KARL BURDEN-EL BEY, a/k/a "Carl L. Burden" (hereinafter "defendant"), with thirty counts of Aiding in the Preparation of False Tax Returns in violation of

1

26 U.S.C. § 7206(2) (Counts 1-30), one count of Theft of Government Funds in violation of 18 U.S.C. § 641 (Count 31), and five counts of Failure to File a Tax Return in violation of 26 U.S.C. § 7203 (Counts 32-36).  Doc. 1.  On July 9, 2021, a jury convicted the Defendant of all thirty-six counts with which he was charged. Doc. 100.

## II. FACTUAL SUMMARY

During the years in question, defendant worked as a professional tax return preparer in the Eastern District of Virginia. Doc. 107 at 4.  Defendant did not work out of an office; he met with clients in public places to collect their tax-related documents and prepared and filed his clients' tax returns outside of their presence. *Id.*  He charged fees for his services, which he typically took directly from his client's refunds, although sometimes he collected cash from the client. *Id.*

Defendant did not secure a Preparer Tax Identification Number ("PTIN") from the IRS, as the IRS requires of anyone who wishes to prepare tax returns as a professional service in exchange for money. *Id.*  Therefore, all of defendant's clients' tax returns appear to be self-prepared because he did not include any of his own identifying information in the Paid Preparer Sections of those returns. Doc. 107 at 4-5.

*1. Counts 1-30 – Aiding and Assisting in the Preparation of a False Tax Return, 26 U.S.C. 7206(2)*

Counts One through Thirty relate to defendant's aiding and assisting in the preparation and presentation of fraudulent U.S. individual income tax returns for the 2013 through 2018 tax years on behalf of eleven client. Doc. 107 at 5.  The government proved at trial that the defendant prepared false income tax returns for clients, which resulted in larger tax refunds issued than those

clients were entitled to receive, had defendant prepared the returns honestly. *Id.*  In some instances, if defendant prepared his client's return properly, the client would have owed money to the IRS. *Id.*

The government further proved at trial that the defendant generated tax returns that included numerous falsities. *Id.*  He typically employed a pattern of falsities using the residential energy credit and Schedule A deductions, such as gifts to charity, medical expenses, and unreimbursed employee expenses. Doc. 107 at 5-6.  One after another, taxpayer client witnesses testified that they did not tell defendant to include any false information and that they did not know he had done so. Doc. 107 at 6.

Defendant often took his fee directly from the client's refund by filing with the return an IRS Form 8888, *Allocation of Refund*, which directed the Treasury to deposit all or a portion of the refund to one or more bank accounts. Doc. 107 at 5.  Specifically, defendant used the Forms 8888 to direct a portion of his client's refund to their bank account and the balance (the amount of which was often not disclosed to the client) to his own bank account(s). *Id.*  The IRS does not permit a tax preparer to use Form 8888 to receive his tax preparer fee. *Id.*  Indeed, the Instructions to Form 8888 specify that the form should only be used to direct a portion of a refund to an account in the name of the taxpayer. *Id.*  To prevent fraud, the IRS will not deposit a refund or a portion thereof into a bank account that has been used three times previously in the same tax year. *Id.* Instead, the IRS will issue a paper check and mail it to the address associated with the tax return. *Id.*

In one instance, defendant attempted to divert all of taxpayer client witness C.C.'s artificially inflated 2015 tax refund. *Id.*  Defendant did not use a Form 8888 on this return, but simply directed the IRS to deposit the entire refund into his own bank account, a Wells Fargo

account ending in 6178. *Id.*  The IRS, however, did not direct deposit the refund, but issued a paper check and mailed it to the address on file for C.C.'s 2015 tax return—which happened to be a P.O. box defendant owned. *Id.*  C.C. testified that he became concerned with how long it was taking for him to receive his refund and that he called defendant on the phone repeatedly to inquire, but that defendant didn't answer. *Id.*  C.C. further testified that it was only after he called defendant from a friend's cell phone that defendant picked up the phone and arranged a time and place to meet C.C. to provide him the refund check. *Id.*

The evidence at trial also showed that the defendant caused some of his clients to pay fake charities he controlled.  Several witnesses testified that defendant asked them to write him a check as a donation to a supposed charitable organization, either the Virginia Vipers Sports Association ("VSA") or Veterans for Change ("VFC"). *Id.*  For example, defendant prepared a tax return for taxpayer witness C.M. for tax year 2016, which included several false items.  Defendant used a Form 8888 to direct $3,500 of the artificially inflated refund into his own bank account. *Id.*  But the IRS stopped the direct deposit and issued a paper check to C.M. instead, thereby depriving defendant of his expected fee. *Id.*  C.M. testified that, months later, defendant reached out to her and asked her to write a check for a charitable donation in the amount of $2,500, stating that it would help with her refund. *Id.*  But neither VSA nor VFC were legitimate charities; they were corporations registered to defendant, and the bank accounts associated with them were defendant's personal bank accounts. *Id.*

### 2. Count 31 – Theft of Government Funds, 18 U.S.C. § 641

Additionally, the government proved that the defendant prepared a false 2015 return for clients S.B. and M.B. which resulted in a greatly inflated refund of $18,437. Doc. 107 at 12.  He

then used a Form 8888 to divert $5,000 of that refund to a bank account he controlled. *Id.* Had defendant prepared this return honestly, the clients would have actually owed the IRS $2,425. *Id.* In other words, defendant's actions with respect to *this tax return alone* caused a loss to the government of $20,862.

*3. Counts 32-36 – Failure to File a Tax Return, 26 U.S.C. § 7203*

Finally, the government proved that for five consecutive years, defendant did not file his own tax returns by the statutory due date, despite earning gross income in excess of the minimum filing threshold each year, as follows:

| COUNT | IRS FORM REQUIRED TO BE FILED | TAX YEAR | DEFENDANT'S GROSS INCOME | IRS FILING THRESHOLD | TAX LOSS |
|---|---|---|---|---|---|
| 32 | 1040 | 2013 | $43,797 | $10,000 | $10,433 |
| 33 | 1040 | 2014 | $35,655 | $10,150 | $7,637 |
| 34 | 1040 | 2015 | $17,547 | $10,300 | $3,073 |
| 35 | 1040 | 2016 | $15,324 | $10,350 | $2,528 |
| 36 | 1040 | 2017 | $19,500 | $10,400 | $3,514 |

*Doc. 107 at 12.*

The parties stipulated that defendant received gross income in each of the charged years, and that by reason of such gross income, he was required by law to make an income tax return to the IRS, stating specifically the items of his gross income and any deductions and credits to which he was entitled.  Doc. 95.  The defendant's failure to file personal income tax returns for those years resulted in a tax loss to the government of $27,185. Doc. 107 at 12.

## III. OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT

The government objects to Paragraph 20 which states: "According to the Government, there are at least 39 taxpayers who had their tax returns fraudulently competed [*sic*] by the defendant." To clarify, the government submitted evidence that the defendant prepared 39 false tax returns—the 30 listed in the indictment, plus nine others for relevant conduct. Many of these returns were prepared for the same taxpayer clients. The 30 counts listed in the indictment pertain to 11 taxpayer clients, nine of whom testified at trial. The additional nine returns included for relevant conduct purposes pertain to four taxpayer clients, for a total of 15 taxpayer clients, not the 39 indicated in the Presentence Investigation Report.

Similarly, the government objects to Paragraph 82 which states in pertinent part: "…the Government wished to clarify that the nine taxpayers referenced in Paragraph 13 were interviewed by case agents and all nine confirmed the defendant prepared the tax returns referenced in Paragraph 13." This concerns the nine additional tax returns included for relevant conduct purposes and pertains to four taxpayers, not nine, as discussed in more detail in Section IV below.

## IV. TAX LOSS INCLUDING RELEVANT CONDUCT

Section 2T1.4 of the United States Sentencing Guidelines governs the sentencing of defendants who have aided, assisted, procured, counseled, or advised tax fraud. The base offense level is the level from § 2T4.1 (the Tax Table) corresponding to the amount of tax loss. U.S.S.G. § 2T1.4(a)(1). In this case, the total tax loss for sentencing purposes is $302,911. Doc. 107 at 12.

The Government's tax loss calculations are accurate, conservative, and should be adopted by the Court. The tax loss attributable to the defendant's conduct consists of three parts: (1) the loss pertaining to the 30 false tax returns defendant prepared for the client taxpayer witnesses, (2)

the loss attributable to the five years for which defendant failed to file a tax return, and (3) relevant conduct pertaining to other false tax returns the defendant prepared that the government did not present at trial.

The tax loss attributable to the 30 false tax returns defendant prepared for the client taxpayer witnesses is $222,058. Doc. 107 at 6-11.  The loss attributable to defendant's failure to file his own tax returns for five consecutive years is $27,185. Doc. 107 at 12.  Thus, the total loss attributable to defendant's conduct as proved at trial is $249,243.

The third category of tax loss is relevant conduct which pertains to nine additional false tax returns prepared by the defendant for four taxpayer clients who did not testify at trial. Doc. 107 at 11.  Under the Sentencing Guidelines, the Court should include this conduct when determining the total loss the defendant caused.  U.S.S.G. § 2T1.1 defines relevant conduct tax loss as "the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." U.S.S.G. § 2T1.1(c)(1).  To determine "the total tax loss attributable to the offense," an application note to Section 2T1.1 broadly directs that "all conduct violating the tax loss should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated" and cross-references Section 1B1.3(a)(2), which concerns relevant conduct.  U.S.S.G. § 2T1.1, Application Note 2.

According to Section 1B1.3, offenses may be part of a "common scheme or plan" if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, Application Note 5(B)(i).  Offenses that are not part of a common scheme or plan may instead be part of "the same course of conduct" if they are "sufficiently connected or related to each other as

to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* at 5(B)(ii).

In this case, in addition to the tax returns presented at trial, the defendant filed nine false tax returns for tax years 2012 through 2017 for four taxpayers (two individual filers and one married couple). Doc. 107 at 11.  Each of the nine returns requested a refund, but when the IRS re-created the returns absent the defendant's false items, eight of them actually reported a tax due and owing, and the ninth reported a vastly smaller refund than what was originally requested. These additional false tax returns resulted in a total loss to the government of $53,668. *Id.*  IRS interviewed the four taxpayers and confirmed that defendant prepared them and that they contained numerous false items. Doc. 107 at 26 (subject to the clarification identified in Section III above). The underlying facts supporting the government's relevant conduct calculations appear to be uncontested by defendant; rather, he appears to object to the inclusion of relevant conduct on legal grounds.


## V. GUIDELINES CALCULATIONS

The law is well-settled that the sentencing court may consider not only the tax loss which was adduced at trial in arriving at a total tax loss figure, but loss attributable to all relevant conduct as well.  U.S.S.G. §1B1.3(a).  Hence, in calculating the tax loss, a court may consider both charged and uncharged conduct, as well as conduct falling outside the applicable statute of limitations.  Tax loss calculations may be based upon IRS interviews with taxpayers, even if there was no opportunity for the defendant to cross-examine the taxpayers. *United States v. Goosby*, 523 F.3d 632, 639 (6th Cir. 2008).  To that end, the government recommends a finding that the total tax

loss—which is the loss adduced at trial ($249,243) plus relevant conduct ($53,668)—is more than $250,000, but less than $550,000, corresponding to a base offense level of 18.

A two-level enhancement is appropriate pursuant to U.S.S.G. § 2T1.4(b)(1)(B) because the defendant was in the business of preparing tax returns, resulting in a total offense level of 20, which corresponds with a period of incarceration of 33 to 41 months.

## VI. 18 U.S.C. § 3553(a) SENTENCING FACTORS

Pursuant to 18 U.S.C. § 3553(a), the Court must impose a sentence that is sufficient, but not greater than necessary, to address the goals of sentencing. For the reasons set forth below, a term of imprisonment at the high-end of the applicable Guidelines range is an appropriate sentence in this case and adequately takes into account the § 3553(a) factors.

## A. Nature and Circumstances of the Offense

*1. Defendant's Criminal Conduct was Egregious*

The nature and circumstances of the defendant's offense are more egregious than those of the typical tax return preparer case. Like many fraudulent return preparers, defendant engaged in a multi-year pattern of misconduct in which he placed false items on his clients' returns without their knowledge or consent.  Also like many fraudulent return preparers, defendant benefited from the scheme by charging disproportionately large fees and by not only failing to report his income from his return preparation business on his own individual income tax returns, but failing to file a return with the IRS for five consecutive years.

Two details from this case make defendant's conduct particularly egregious.   The first is that in addition to falsifying the returns to artificially inflate his clients' the refunds, defendant also stole outsized portions of those inflated refunds. And, in at least the case of one client, C.C.,

defendant attempted to steal the entire refund: he put only his bank account on the return and also his own mailing address, so that when the IRS issued the refund in the form of a paper check, it was mailed directly to defendant.  At trial, the witness testified that he called defendant repeatedly to get his refund check, but that defendant ignored his calls until he called on someone else's number and defendant finally, begrudgingly arranged to meet with C.C. and deliver the refund check.  This type of theft makes Defendant substantially more culpable than the typical fraudulent return preparer, and thus warrants serious punishment.

The second is that the defendant lied to his clients about the nature of two organizations he ostensibly ran, Veterans for Change and Virginia Vipers Sports Association.  Although he did not reveal his connection to the organizations, he deliberately misled three of his clients into believing that these were legitimate charitable organizations and that, if those clients donated to them, they would receive bigger tax refunds.  What the clients did not know is that both organizations were registered corporations and that, in reality, the supposed "donations" were really just lining the defendant's pockets.

## 2. Defendant Caused a Loss to the Government in Excess of $300,000

As set forth above, the total tax loss including relevant conduct in this case is $302,911. This number represents the loss attributable to 30 income tax returns defendant prepared for testifying taxpayer witnesses for tax years 2013-2018, his own failure to file income tax returns for tax years 2013-2017, and for nine returns of non-testifying taxpayer witnesses for tax years 2012-2017.  For the testifying witnesses, an IRS Revenue Agent recreated the relevant returns after listening to the witnesses testify at trial.  The Revenue Agent then calculated the refunds the clients would have received, or the amount of tax they would have owed, if their returns had been prepared

accurately. The difference between the refund amount on the return defendant prepared and the correct refund amount (or tax liability) is the tax loss associated with each return.

Similarly, to calculate the tax loss as a result of defendant's repeated failures to file his own tax returns, the Revenue Agent listened to witness testimony and examined the defendant's bank records to determine his income in 2013 through and including 2017.  She then created the relevant returns to determine how much tax defendant owed.

The defendant prepared false tax returns over at least a five-year period and caused a loss to the United States of at least $302,911.  Worse, he routinely stole portions of refunds above and beyond the agreed-upon fees without his clients' knowledge and lied to them about supposed charitable donations. Given the gravity of the defendant's conduct and his continued refusal to accept responsibility, a Guidelines sentence is warranted.

### 3. General Deterrence

A need for general deterrence likewise calls for a Guidelines sentence.  In the context of a prosecution for tax fraud, it is particularly important that the sentence imposed promote general deterrence.  Our nation's system of tax laws relies on the voluntary compliance of individual taxpayers to accurately report their income, and therefore relies on honest return preparers to truthfully report the information provided to them by their clients.  In fact, this system usually works, as most taxpayers honestly report and pay their taxes.  Nonetheless, IRS studies reveal that a persistent subset of the population, approximately 16.4% based on the latest estimate, do not. *Tax Gap Estimates for Tax Years 2011–2013*, Publication 1415 (Rev. 9-2019), pg. 7, *available at* https://www.irs.gov/pub/irs-pdf/p1415.pdf.

Of course, fraudulent return preparers are particularly responsible for this problem since,

on their own, one preparer (like the defendant) can cause more than a hundred taxpayers to be noncompliant. In total, the IRS estimates that there was an average of $441 billion in unreported and uncollected taxes in each year from 2011-2013. *Id*. As a result, law-abiding taxpayers incurred the effective equivalent of a $3,000 "surtax" per household to subsidize tax cheats. *See National Taxpayer Advocate 2020 Purple Book: Compilation of Legislative Recommendations to Strengthen Taxpayer Rights and Improve Tax Administration*, Publication 5286 (Rev. 12-2019), pg. 7, *available at* https://taxpayeradvocate.irs.gov/Media/Default/Documents/2019-ARC/ARC19_PurpleBook.pdf.

At the same time, criminal prosecutions to curtail noncompliance and outright tax fraud are relatively scarce, reflecting the limited availability of resources necessary to conduct and prosecute such cases. According to recent figures from the United States Sentencing Commission, there were only 324 prosecutions for tax fraud in fiscal year 2020, which represents a mere 0.5 percent of all defendants sentenced in federal prosecutions. *See "Quick Facts: Tax Fraud Offenses"* (August 2020), *available at* https://www.ussc.gov/research/quick-facts/tax-fraud.

"Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations," the United States Sentencing Commission has stressed in its introductory comments that "deterring others from violating the tax laws is a primary consideration underlying the Sentencing Guidelines." U.S.S.G., Ch. 2, Pt. T, intro. comment. Indeed, as the Sentencing Commission has recognized, the sentence imposed must provide sufficient punishment in order to deter potential tax offenders. *Id.* ("Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators."). A term of imprisonment is often necessary to achieve such a deterrent effect, given the limited number of tax prosecutions relative to their incidence. *See generally*, Louis Kaplow

and Steven Shavell, *Fairness Versus Welfare*, 114 Harv. L. Rev. 961, 1225-1303 (2001). This principle is something the Fourth Circuit recognized and endorsed in vacating a probationary sentence imposed in a tax evasion case:

> Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise. The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.

*United States v. Engle*, 592 F.3d 495, 501 (4th Cir. 2010). And indeed, "[s]tudies have shown that salient examples of tax-enforcement actions against specific taxpayers, especially those that involve criminal sanctions, have a significant and positive deterrent effect." Joshua D. Blank, *In Defense of Individual Tax Privacy,* 61 Emory L.J. 265, 321 (2011).  Sentencing the defendant to a Guidelines term of imprisonment is therefore necessary to provide a serious deterrent effect for the general population, teaching the community that tax fraud is met with meaningful consequences, above and beyond the requirement that such taxes be repaid.

## VII. RESTITUTION

The Court should also order the defendant to pay restitution in the amount of $249,243. For tax offenses prosecuted under Title 26, restitution is discretionary and may be ordered as a condition of supervised release. *See, e.g.,* U.S.S.G. § 5E1.1(a)(2).  District courts are authorized by 18 U.S.C. § 3583(d) to impose, as a condition of supervised release, "any condition set forth as a discretionary condition of probation in section 3563(b)."  Section 3563(b) authorizes a district court to order a defendant to "make restitution to a victim of the offense under section 3556."  Section 3556 authorizes a district court to "order restitution in accordance with section 3663," which in turn provides that a court "may order…that the defendant make restitution to any victim

13

of such offense."  And, although § 3663 by its own terms limits restitution to certain (non-Title 26) offenses, § 3563(b) expressly provides that § 3663's limitation in scope does not apply to restitution as a condition of probation (or, accordingly, as a condition of supervised release). *See United States v. Perry*, 714 F.3d. 570, 577 (8th Cir. 2013).  Moreover, a court's authority to order restitution for Title 26 offenses as a condition of probation or supervised release is explicitly recognized in the Sentencing Guidelines, which prescribes the use of that authority. See U.S.S.G. § 5E1.1(a)(2); *Gall v. United States*, 21 F.3d 107, 109-10 (6th Cir. 1994).

For the purposes of determining the amount of restitution, § 3663(a)(1)(A) requires a showing of actual loss to the victim—the IRS in this case. *See United States v. Galloway*, 509 F.3d 1246, 1253 (10th Cir. 2007) (restitution must be based on actual loss, not on the amount of gain to the defendant).  Generally, the amount of restitution is limited to losses caused by the specific conduct underlying the offense of conviction and does not include relevant conduct.  *See Hughey v. United States*, 495 U.S. 411, 420 (1990); *and see United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005) (remanding restitution order on plain error review where the amount of restitution was not limited to the conduct underlying the offense for which defendant was convicted.)

For tax offenses prosecuted under Title 18, restitution is mandatory and is ordered as an independent part of the sentence.  In this case, the only mandatory restitution is in the amount $5,000, relating to Count 31, Theft of Government Funds, in violation of 18 U.S.C. § 641.

Restitution as to the Title 26 counts may be ordered at the sentencing court's discretion. The appropriate restitution amount for the Title 26 charges is $244,243, which relates to the counts for which defendant stands convicted.  This figure is the total loss attributable to defendant's Title 26 convictions, less $5,000 covered by the restitution defendant owes under his Title 18 conviction. Because defendant's Title 18 conviction pertains to the same false return charged under Title 26

14

in Count 3 of the indictment, $5,000 should be subtracted from total restitution amount covered by his convictions on Counts 1-30 and 32-36.

## VIII. CONCLUSION

For the reasons set forth above, the Government respectfully recommends a sentence at the high end of the Guidelines range of 33 to 41 months of imprisonment.  The government also requests that the Court impose three years of supervised release and order restitution in the amount of $249,243.

Respectfully submitted,

JESSICA D. ABER
United States Attorney

By: _____
Francesca L. Bartolomey
Trial Attorney
New York Bar No. 5089990
United States Department of Justice, Tax Division
Southern Criminal Enforcement Section
150 M Street, N.E.
4 Constitution Square, Mail Stop: 1.1505
Washington, D.C. 20002
Francesca.L. Bartolomey@usdoj.gov
Tel. (202) 305-8803

GRACE E. ALBINSON
Trial Attorney
New York Bar No. 4952697

LISA R. MCKEEL
Assistant United States Attorney
Eastern District of Virginia, Newport News Division
Virginia Bar No. 28652

15

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2021, I electronically filed the foregoing United States'
Sentencing Memorandum with the Clerk of Court using the CM/ECF system, which will send
notification of such filing to the following:

> Laura P. Tayman, Esq.
> Counsel for the Defendant
> 11815 Fountain Way, Suite 300
> Newport News, Virginia 23606
> (757) 926-5277
> Laura@TaymanLaw.net

By: _____
FRANCESCA L. BARTOLOMEY
Trial Attorney
New York Bar No. 5089990
U.S. Department of Justice, Tax Division
Southern Criminal Enforcement Section
150 M Street, N.E.
4 Constitution Square, Mail Stop: 1.1505
Francesca.L.Bartolomey@usdoj.gov
Tel. 202-305-8803